## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                                    Crim. No. 19-185(2) (SRN)

        Plaintiff,

    v.                                                   **ORDER ON § 2255 MOTIONS**

William Charles Graham,

        Defendant

---

Justin Wesley, Nathan Hoye Nelson, and Craig Baune, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

William Charles Graham, Reg. No. 22097-041, USP-McCreary, P.O. Box. 3000, Pine Knot, KY 42635, Pro Se Defendant

---

SUSAN RICHARD NELSON, United States District Judge

Pending before the Court are the following motions for collateral review filed by Defendant William Charles Graham:  (1) the Pro Se Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Doc. No. 597]; (2) the Pro Se Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Doc. No. 604]; and (3) the Supplemental Request re: Defendant's § 2255 Motion [Doc. No. 674] (collectively, the "§ 2255 Motions").  The Government opposes Defendant's § 2255 Motions [Doc. No. 629].

Also pending before the Court are numerous related motions that the Court characterizes as follows:  (1) motions substantively related to the § 2255 Motions [Doc.

Nos. 605; 615; 624; 642; 676]; (2) motions for release pending collateral review (Pro Se Request for Release Pending Review [Doc. Nos. 607; 633; 643; 651]; and (3) motions for an evidentiary hearing [Doc. Nos. 637; 660].

Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** Defendant's § 2255 Motions, as well as his related motions, motions for release, and motions for an evidentiary hearing.

## I.    BACKGROUND

### A. Offense Conduct, Trial, and Sentencing

On April 30, 2019, Defendant William Charles Graham, along with co-defendant Ronald Jermaine Jackson, entered a T-Mobile store in Brooklyn Center, Minnesota. (Findings of Fact & Conclusions of Law [Doc. No. 258] ¶¶ 1–5.)  Graham and Jackson brandished handguns (one of which was ultimately determined to be a BB gun) and led the two store employees to a back room.  (*Id*. ¶¶ 6–9.)  After Graham bound the hands and feet of the employees with zip ties, he and Jackson proceeded to take over 70 cell phones and other electronic devices.  (*Id*. ¶¶ 10–11.)  Law enforcement officers apprehended Graham and Jackson shortly thereafter.  (*Id*. ¶¶ 18–37.)  When officers apprehended Graham, he spontaneously confessed his involvement in the robbery, telling the arresting officer without prompting, "I did it."  (*Id*. ¶ 36.)

Graham and Jackson were charged with two counts in the Indictment:   (1) Interference with Commerce by Robbery (commonly known as "Hobbs Act robbery"), and (2) Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence.  (Indict. [Doc. No. 1].)  Although the Court appointed counsel to represent

Graham, based on Graham's stated desire to represent himself, his counsel moved to withdraw from representation in January 2020. (Doc. No. 103.) After determining that Graham knowingly and intelligently waived his right to counsel, the Court granted his motion and appointed Graham's former counsel to serve as standby counsel. (Jan. 23, 2020 Order [Doc. No. 117].)

At the pretrial conference held shortly before trial, Graham and Jackson each voluntarily, knowingly, and intelligently waived their respective rights to a jury trial, to which the United States consented and the Court approved, pursuant to Federal Rule of Criminal Procedure 23(a). (See Minute Entry [Doc. No. 239]; Graham Waiver of Right to Trial by Jury [Doc. No. 240].)

The Court presided over a bench trial on September 22, 2020 through September 24, 2020, at which Graham continued to represent himself. On the first day of trial, Graham and Jackson moved to withdraw their waivers and proceed to trial before a jury. (Trial Tr. [Doc. No. 249] at 11–12.) The Court discussed with them, at length, their concerns about proceeding with a bench trial. (*Id*. at 12–20.) Finding that the motion to withdraw was untimely and would unduly interfere with and delay the proceedings, the Court denied the motion. (*Id*. at 34–35.)

The facts presented at trial established that the Government had proven, beyond a reasonable doubt, that Graham had committed the two offenses charged in the Indictment. (Findings of Fact & Concls. of Law ¶¶ 66–70; 79–92.) On October 2, 2020, the Court announced Graham's conviction. (Oct. 2, 2020 Minutes [Doc. No. 259].)

On June 22, 2021, the Court sentenced Graham to a total of 294 months in prison, consisting of 210 months on Count 1 and 84 months on Count 2, to run consecutively. (Sentencing J. [Doc. No. 489] at 2.)  In determining an appropriate sentence, the Court adopted the recommendation in the Presentence Investigation Report ("PSR") that Graham should be sentenced as a career offender because he had two prior convictions for crimes of violence.  (*See* Sentencing Tr. [Doc. No. 658] at 15–16.)  The qualifying convictions were a 2014 conviction for aggravated robbery and kidnapping and a 2015 conviction for kidnapping.  (*Id*.)

### B.  Attempted Direct Appeal

Graham timely filed a notice of appeal with the Eighth Circuit Court of Appeals on June 26, 2021.  (Pro Se Notice of Appeal [Doc. No. 216].)   Graham twice moved for a stay of judgment and release pending appeal, which the Eighth Circuit denied.  *See United States v. Graham*, No. 21-2452 (8th Cir. July 20, 2021 & July 27, 2021).

Graham attempted to file materials in support of his appeal, which the Eighth Circuit rejected for noncompliance with the applicable Federal Rules of Appellate Procedure and Eighth Circuit Rules.  *Id.* (8th Cir. Aug. 3, 2021).   Graham filed two motions for reconsideration of this ruling, which the Eighth Circuit denied.  *Id.*  (8th Cir. Aug. 17, 2021).  He then attempted to resubmit materials in support of his appeal, which the Eighth Circuit again rejected for non-compliance with the applicable rules.  *Id*. (8th Cir. Sept. 22, 2021).  The Eighth Circuit directed Graham to show cause within 14 days why his appeal should not be dismissed for failure to prosecute.  *Id*.  Graham sought reconsideration and

again moved for a stay of his sentence and release pending appeal, which the Eighth Circuit denied. *Id*. (8th Cir. Sept. 29, 2021 & Nov. 2, 2021).

Before the Eighth Circuit issued its judgment or mandate, Graham filed his initial § 2255 Motion [Doc. No. 597] with this Court on November 2, 2021.

Because Graham had failed to respond to the Eighth Circuit's Order to Show Cause, the appellate court dismissed his appeal for want of prosecution on November 3, 2021, and issued its mandate. (8th Cir. J. [Doc. No. 601] & Mandate [Doc. No. 602].)

Subsequently, Graham filed three motions to recall the mandate, all of which the Eighth Circuit denied. *Graham*, No. 21-2452 (8th Cir. Nov. 16, 2021, Dec. 10, 2021, Feb. 14, 2022).

### C. Section 2255 Motions

As noted, Graham filed his initial § 2255 Motion on November 2, 2021, and amended his motion on November 15, 2021. Graham supplemented his arguments on November 19, 2021 [Doc. No. 605], January 24, 2022 [Doc. No. 615], and February 11, 2022 [Doc. No. 624].

The Court directed the Government to respond to the § 2255 Motions [Doc. Nos. 597 & 604] by February 18, 2022, and permitted Graham to file a reply by March 11, 2022 [Doc. No. 616]. The Government timely filed its memorandum in opposition [Doc. No. 629], and Graham timely filed a Reply [Doc. No. 640]. The Court took the motions under advisement on March 11, 2022, the date permitted for Graham to reply.

In his § 2255 Motions, Graham identifies the following claims: (1) a due process violation under the Fifth Amendment for being prosecuted and sentenced "twice for

substantially the same offense" (Doc. No. 597 at 7; Doc. No. 604, Ground 1; Doc. No. 615 at 1–2); (2) a constitutional violation based on prosecution by Assistant United States Attorneys who "failed to state a claim on which relief can be granted" (Doc. No. 604, Ground 2); (3) a Fifth Amendment violation based on the lack of "proven independence" of Assistant United States Attorneys to charge Graham in the federal system and for "holding the defendant to answer for crimes not presented or indicted by a grand jury" (Doc. No. 604, Ground 3; Doc. No. 605 at 1; Doc. No. 615 at 1, 3; Doc. No. 624 at 1); (4) a Fifth and Sixth Amendment violation based on Graham's lack of knowledge of his career offender status, which "is not a federal crime," and sentencing based, in part, on that status (Doc. No. 604, Ground 4); (5) a lack of fair notice of the criminal charges against him, which he alleges are also unconstitutionally vague (Doc. No. 615 at 1–3); (6) a Sixth Amendment violation based on the Court's enforcement of his jury trial waiver and the right to face his accuser (Doc. No. 615 at 3); and (7) a due process violation in light of *United States v. Taylor*, __ U.S. __, 142 S. Ct. 2015 (2022). (Doc. No. 674 at 1.)

## II.   DISCUSSION

### A.  Section 2255 Motions

Section 2255 provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

While § 2255 generally affords relief, it is only available in limited circumstances. As the Eighth Circuit has stated, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). The petitioner bears the burden of proof as to each ground for relief. [1] *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citing *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969)).

## 1. Double Jeopardy

As noted, Graham argues that he was unconstitutionally prosecuted "twice for substantially the same offense." (Doc. No. 597 at 7.) Consequently, he claims a violation of his Fifth Amendment right against double jeopardy. (*Id*.) Although Graham does not provide any factual detail for this argument, the Court assumes he contends that the same factual events gave rise to his charges and convictions on both counts of the Indictment, resulting in an alleged double jeopardy violation.

A multiplicitous indictment, which "charges the same crime in two counts," is impermissible because it can result in conviction on both counts, "subjecting the defendant to two punishments for the same crime in violation of the double-jeopardy clause of the

---

[1] The Court finds that Graham's motion is timely. *See* 28 U.S.C. § 2255(f)(1) (the one-year statute of limitations runs from the date on which the judgment of conviction became final); *id*. § 2255(f)(2) (the one-year limitations period runs from the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review).

fifth amendment." *United States v. Sandstrom*, 594 F.3d 634, 651 (8th Cir. 2010) (citing

*United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005)).  Such a violation may occur

unless each of the two offenses  "'requires proof of an additional fact which the other does

not.'"  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

Here, the statute applicable to Count 2 (Using, Carrying, and Brandishing a Firearm

During and in Relation to a Crime of Violence), 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii),

specifically contemplates its use in combination with a separate offense, i.e., "a crime of

violence."  It provides, in relevant part,

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise
> provided by this subsection or by any other provision of law, any person who,
> during and in relation to any crime of violence or drug trafficking crime
> (including a crime of violence or drug trafficking crime that provides for an
> enhanced punishment if committed by the use of a deadly or dangerous
> weapon or device) for which the person may be prosecuted in a court of the
> United States, uses or carries a firearm, or who, in furtherance of any such
> crime, possesses a firearm, shall, *in addition to the punishment provided for
> such crime of violence* or drug trafficking crime—
>
>> (ii) if the firearm is brandished, be sentenced to a term of
>> imprisonment of not less than 7 years[.]

18 U.S.C. § 924(c)(1)(A)(ii) (emphasis added).  The statute also requires that the additional

term of imprisonment be consecutive: "no term of imprisonment imposed on a person

under [section 924(c)] shall run concurrently with any other term of imprisonment imposed

on the person, including any term of imprisonment imposed for the crime of violence or

drug trafficking crime during which the firearm was used, carried, or possessed." *Id*. §

924(c)(1)(D)(ii).

Each of Graham's convictions required proof of an element that the other did not. As the statute plainly states, to obtain a conviction under § 924(c), the Government was required to prove that Graham was guilty of committing the underlying "crime of violence"—in this case, Hobbs Act robbery, charged in Count 1.  In *Diaz v. United States*, 863 F.3d 781, 783 (8th Cir. 2017), which involved a completed Hobbs Act robbery, as is the case here, the court held that such a robbery qualifies as a crime of violence under the elements clause of § 924(c)(3).

To obtain a conviction on Count 2 for the conduct quoted above, the Government was required to prove that Graham had "used, carried, or possessed" a firearm while committing Hobbs Act robbery. The Eighth Circuit has observed that § 924(c)(1)(A) "'has no language limiting its reach to offenses occurring in a separate 'criminal transaction' or 'course of conduct,' and we cannot and will not read that requirement into the statute.'" *Sandstrom*, 594 F.3d at 656 (quoting *United States v. Rahim*, 431 F.3d 753, 757 (11th Cir. 2005)).

Accordingly, the Court finds that Graham did not suffer a Fifth Amendment violation.  He was properly charged, convicted, and sentenced consecutively on Counts 1 and 2 of the Indictment.  Graham is not entitled to any relief on the basis of his double jeopardy claim.

### 2. Prosecution's Alleged Failure to State Claim on Which Relief Can Be Granted

Graham also contends that he is entitled to relief because counsel for the Government "has failed to state a claim upon which relief can be granted." (Doc. No. 604,

Ground 2.)  While Graham has accurately stated the basis on which a defendant may move to dismiss a claim in a civil action under Federal Rule of Civil Procedure 12(b)(6), that standard has no bearing in this criminal case.

The Indictment clearly charged Graham with Interference with Commerce by robbery (Hobbs Act robbery), in violation of 18 U.S.C. §§ 2 and 1951, and Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii).  (Indictment, Counts 1 & 2.)   Not only did the facts alleged in the Indictment support both counts, at trial, the Court found Graham guilty beyond a reasonable doubt of those offenses.  Therefore, Graham's argument regarding the Government's failure to state a claim upon which relief can be granted fails.

### 3.  Validity of the Indictment and Grand Jury Proceedings

With respect to the Indictment, Graham asserts two related arguments.  First, he contends that he has suffered a Fifth Amendment violation because the Government lacks the "proven independence" to charge him in federal court.  (Doc. No. 604, Ground 3; Doc. No. 605 at 1; Doc. No. 615 at 1, 3; Doc. No. 624 at 1.)  Second, he argues that he cannot be held "to answer for crimes not presented or indicted by a grand jury."  (*Id.*)

In support of Graham's first argument, he points to language in a June 18, 2020 Order.  (*See, e.g.*, Doc. No. 604, Ground 3; Doc. No. 597 at 5.)  As preliminary background in the Order, the Court noted, "On July 16, 2019, the *Government* charged Graham . . . with [the crimes alleged in the Indictment]."  (June 19, 2020 Order [Doc. No. 213] at 1) (emphasis added).  Graham asserts that "the U.S. Attorney or [Assistant U.S.] Attorneys

on behalf of the United States cannot charge and/or indict in the federal system being there is no proven independence." (Doc. No. 615 at 3.)

Graham has consistently espoused various "Sovereign Citizen" beliefs concerning the authority of the Government and the Court. (*See, e.g.*, Apr. 7, 2020 Order [Doc. No. 183] at 16 n.2; Feb. 10, 2020 Order [Doc. No. 130] at 4 n.1.) To the extent any Sovereign Citizen arguments form the basis for his Indictment-related arguments, the Court rejects them.[2]

Likewise, the Court rejects Graham's argument that the phrase "the Government charged Graham" somehow supports his claim of a constitutional violation. In the June 18, 2020 Order, the Court used "charged" in the word's standard definition and meaning: "accused." *Charge*, *Black's Law Dictionary* (7th ed. 1999) (defining the verb "charge" as "1. to accuse (a person) of criminal conduct <the police charged him with murder>."). Indeed, the Government "accused" Graham of the two charged offenses.

---

[2] As noted in prior Orders, Sovereign Citizen arguments have been repeatedly and soundly rejected by all courts that consider them, and therefore, require no analysis. *See, e.g., United States v. Jonassen*, 759 F.3d 653, 657 n.2 (7th Cir. 2014) (providing that Sovereign Citizen arguments can take many titles, but at their core "assert that the federal government is illegitimate and insist that they are not subject to its jurisdiction. The defense has no conceivable validity in American law." (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990))); *United States v. Sileven*, 985 F.2d 962, 970 (8th Cir. 1993) (finding similar arguments that defendant was not a federal citizen "plainly frivolous" and noting that further discussion was unnecessary); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (sovereign citizen arguments "are completely without merit, patently frivolous, and will be rejected without expending any more of this Court's resources on their discussion."). (Feb. 10, 2020 Order at 5; *see also* Apr. 7, 2020 [Doc. No. 183] at 16 n.2.)

Furthermore, with respect to the general procedure for initiating felony criminal charges, the prosecutor for the government presents evidence to a grand jury which ultimately votes on whether the evidence supports charging a person with a crime. *United States v. Calandra*, 414 U.S. 338, 343–44 (1974) (noting that a grand jury proceeding is an investigation "to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person."). The grand jury makes the charging decision, and government prosecutors effectuate that decision by filing the indictment and prosecuting the case. *See* 47 Geo. L. J. Ann. Rev. Crim. Proc. 273, 273–74 (2018) (noting that in addition to initiating a criminal prosecution, "[a] prosecutor may also decide what charges to bring, when to bring them, and where to bring them.").

Therefore, in light of standard usage of the word "charge" and the prosecutorial process, it is quite common for courts to refer to "the government" "charging" a person. *See, e.g.*, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, No. 20-843, 2022 WL 2251305, at *20 (U.S. June 23, 2022) ("In one notable example, the *government charged* Sir John Knight, a prominent detractor of James II, with violating the Statute of Northampton[.]") (emphasis added); *Taylor*, 142 S. Ct. at 2019 ("After a robbery went awry and his accomplice shot a man, the federal *government charged* Justin Taylor with violating the Hobbs Act and § 924(c).") (emphasis added); *United States v. Cartwright*, 23 F.4th 1075, 1078 (8th Cir. 2022) ("The *government charged* Cartwright with being a felon in possession of a firearm[.]") (emphasis added); *United States v. Petersen*, 22 F.4th 805, 807 (8th Cir. 2022) ("The federal *government charged* Petersen with nineteen counts in a superseding indictment.") (emphasis added). The use of this phrase does not mean that

government prosecutors have usurped the role of the grand jury in *deciding* whether charges should be brought against a person.  It simply means that after the grand jury makes the decision to bring charges, prosecutors perform the task of filing the charging instrument, which "charges" or "accuses" the defendant of a crime.

It appears that Graham latches onto the phrase "the government charged" to support his longstanding claim that he was not properly indicted by a grand jury.  (Doc. No. 615 at 3) (asserting that he has been unconstitutionally required to defend himself against "charges not presented to or indicted by a grand jury.").  Although Graham's § 2255 filings do not elaborate on this argument, he has consistently argued that the Indictment is invalid because the copy filed on the public docket [Doc. No. 1] lacks the signature of the grand jury foreperson and the representative of the United States Attorney's Office.  (*See, e.g.*, Doc. Nos. 119, 122, 195.)

The Court has thoroughly addressed this argument in prior orders.  (*See, e.g.*, Feb. 10, 2020 Order [Doc. No. 130] at 2–3; June 18, 2020 Order [Doc. No. 213] at 3–7.)  It is an unalterable fact that the grand jury foreperson and an Assistant United States Attorney signed the Indictment. (*Id.*)  In keeping with established practice in this District, the public docket contains an unsigned copy of the Indictment to protect the secrecy of grand jury proceedings.  *See, e.g.*, *United States v. Spencer*, No. 14-cr-322 (SRN/TNL), 2015 WL 5008968, at *8 (D. Minn. Aug. 18, 2015); *United States v. Riley*, Case No. 09-cr-98 (PJS/RLE), 2009 WL 1954633, at *6 (D. Minn. July 6, 2009); *see also United States v. Mariner*, 2012 WL 6082720, at *7 (D.N.D. Dec. 4, 2012).  Moreover, as the Court has noted in prior orders, even if the signatures were absent—which they are not—the

Indictment would nevertheless still be valid. *See United States v. Morse*, 613 F.3d 787, 793 (8th Cir. 2010); *Hobby v. United States*, 468 U.S. 339, 345 (1984).

In sum, neither of Graham's arguments regarding the Indictment afford him any relief in this § 2255 proceeding.

### 4. Career Offender Status

The PSR noted that because Graham was convicted of violating 18 U.S.C. § 924(c), Count 2 resulted in a finding that he was a career offender, with the guideline sentence determined by U.S.S.G. § 4B1.1(c). (PSR ¶ 29.) The applicable guideline range was 360 months to life. (*Id.*) (citing U.S.S.G. § 4B1.1(c)(2)(B)).

Graham alleges constitutional violations based on his lack of knowledge of his career offender status. (Doc. No. 604, Ground 4.) He contends that he learned of his status only by reading the PSR prior to sentencing. (*Id.*) Graham further argues that the author of the PSR, a probation officer, lacks the legal authority to determine a defendant's career offender status. (*Id.*) Finally, he appears to assert that even though career offender status is not a federal crime, by finding him to be a career offender, the Court essentially sentenced him for an uncharged crime without affording him any notice. (*Id.*) The Court addresses these arguments in turn.

### a. Notice of Status

Graham's alleged deprivation of fair notice of his career offender status does not constitute a due process violation. Graham, who was self-represented before, during, and after trial, had the opportunity to submit written objections to the PSR prior to sentencing, and to make verbal objections at sentencing. He did not argue a lack of notice of his career

offender status, nor did he assert any other recognized legal argument.  He has suffered no constitutional violation.  *See United States v. Adail*, 30 F.3d 1046, 1047 (8th Cir. 1994) (finding sufficient notice was provided in the presentence report and any deficiency in notice would be harmless beyond a reasonable doubt because the defendant failed to challenge any of his convictions in his written objections to the report, at sentencing, or on appeal).

Specifically, in the time period for filing objections to the preliminary PSR (Doc. No. 310), Graham filed a pro se copy of the preliminary PSR on which he handwrote on each page, in all capital letters, ACCEPT FOR VALUE (Blue ink) "EXEMPT FROM LEVY."  (Doc. No. 316.)  Whatever such language may mean to Graham, it has no relevance to his career offender status, nor any recognized legal import whatsoever. Similarly, after the filing the final PSR (Doc. No. 337), Graham filed a pro se position paper in which he stated that he had "accepted for value and returned for value all the charging instruments in this matter in exchange for settlement and closure of the accounting concerning the matter of [his case]."  (Doc. No. 348 at 1.)  Graham failed to object to his career offender status or his alleged lack of notice regarding that status.

At sentencing, when the Court asked Graham if he had any objection to the PSR, he stated,

> Appearing as authorized representative, attorney in fact, in the matter of 19-CR-185 number 2, I have accepted and returned for value all the charging instruments in this matter pertaining to this case.  By way of my exemption, I'm discharging any and all obligations that's connected.
>
> As I said before, appearing as authorized representative, attorney in fact, I do not consent to being incarcerated.  I request that the Court release the orders

of the Court to me, and I request to be released from any and all custody
effective immediately.

(Sentencing Tr. at 6–7.)  Graham failed to raise the issue of his career offender status at

any point during the sentencing hearing, even though the Court specifically noted its

application.[3]  (*Id.* at 5.)  While Graham filed many documents after receiving the PSR, he

identifies no documents in which he claimed a lack of sufficient notice about his career

offender status.

Even if Graham did not learn of his career offender status and its effect on the

Sentencing Guidelines until receiving the PSR, the Eighth Circuit has found such notice to

be constitutionally sufficient.  *See United States v. Bates*, 77 F.3d 1101, 1105 (8th Cir.

1996) (rejecting claim of a due process violation where defendant received adequate notice

of government's intention to enhance his sentence based on three prior convictions as two

convictions were proven at trial, and the PSR addressed the third conviction); *United States

v. McMurray*, 20 F.3d 831, 833 (8th Cir. 1994) (finding that defendant had adequate notice

of the sentencing enhancement because the initial presentence report described the prior

conviction and recommended that he be sentenced as a career offender because of the prior

conviction).  Accordingly, Graham is not entitled to relief based on any alleged lack of

notice about his career offender status.

### b.  Probation Officer's Authority

---

[3] The Court also notes that at sentencing, Graham knowingly and intelligently
rejected the offer of standby counsel's representation and continued to represent himself.
(Sentencing Tr. at 2–3.)

Graham next argues that the author of the PSR, a probation officer, lacked the legal authority to determine career offender status. This argument affords Graham no relief.

Following a defendant's conviction, Federal Rule of Criminal Procedure 32 authorizes probation officers to conduct a presentence investigation and to submit a report to the court. Fed. R. Crim. P. 32(c)(1)(A). By law, the presentence report must:

(A) identify all applicable guidelines and policy statements of the Sentencing Commission;

(B) calculate the defendant's offense level and criminal history category;

(C) state the resulting sentencing range and kinds of sentences available;

(D) identify any factor relevant to:

    (i)     the appropriate kind of sentence, or

    (ii)    the appropriate sentence within the applicable sentencing range; and

(E) identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1)(A)–(E).

Accordingly, in computing Graham's offense level, as required by law, the probation officer was fully authorized to address whether the Sentencing Guidelines for career offenders applied to Graham's offense level. (*Id.*) By preparing the PSR, the probation officer provided sentencing options to the Court, but did not determine Graham's sentence. Rather, the Court determined an appropriate sentence. Accordingly, Graham is not entitled to relief based on the probation officer's authority.

### c.  Career Offender Status as a Separate "Crime"

Graham also appears to argue that although career offender status is not a federal crime, by finding him to be a career offender, the Court, in essence, unconstitutionally treated his status as a federal crime.    (Doc. No. 604, Ground 4.)  He appears to claim a constitutional violation because the Court's sentence was based on an uncharged crime, for which he lacked notice.  (*Id*.)

This argument has no merit.  Graham's status as a career offender under the Sentencing Guidelines affected his sentence—it was not an independent crime, nor did the Court treat it as such.  Moreover, as the Court has discussed above, Graham had sufficient notice of his status and its effect on his sentence.  Accordingly, Graham is not entitled to § 2255 relief based on this argument.

### 5.  Unconstitutional Vagueness of 18 U.S.C. § 924(c)

Graham also argues that he is entitled to relief because the language of 18 U.S.C. § 924(c)(1)(A)(ii), the statute supporting his conviction on Count 2, is unconstitutionally vague.

As relevant here, under § 924(c)(1)(A)(ii), a person who brandishes a gun in relation to a crime of violence is subject to an additional term of imprisonment of not less than 7 years.  The statute defines "a crime of violence" in two subparts, as a felony that:  (1) has an element of the use, attempted use, or threatened use of physical force against the person or property of another"; or (2) by its nature, "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(A)–(B).  The first portion of the statute defining "a crime of violence" is known as the "elements clause," and the second portion is known as the

"residual clause." *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019). The Supreme Court has held that the residual clause is unconstitutionally vague, *id.* at 2336, however, "even today the elements clause remains in force." *Taylor*, 142 S. Ct. at 2019 (finding, however, that *attempted* Hobbs Act robbery does not require the government to prove beyond a reasonable doubt the use, attempted use, or threatened use of force, and therefore the attempted offense fails to satisfy the elements clause).

Graham's conviction on Count 1 was for *completed* Hobbs Act robbery. Completed Hobbs Act robbery qualifies as a crime of violence under the elements clause because it involves robbery accomplished by "actual or threatened force, or violence, or fear of injury." 18 U.S.C. § 1951(b)(1); *Diaz*, 863 F.3d at 783 (finding that Hobbs Act robbery qualifies as a crime of violence under the elements clause of § 924(c)(3)). Because *Davis*'s finding of unconstitutional vagueness is limited to convictions under the statute's residual clause, *Davis* affords Graham no relief. *United States v. Lewis*, 775 F. App'x 260 (8th Cir. 2019) (finding defendant did not benefit from *Davis* as Hobbs Act robbery qualifies as a "crime of violence" under § 924(c)(3)(A)).

### 6. *Taylor v. United States*

Graham asserts a related argument that he is entitled to collateral relief in light of the Supreme Court's recent decision in *Taylor*. (Doc. Nos. 674 & 676.)

As noted, in *Taylor*, 142 S. Ct. at 2019, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause of § 924(c). In other words, *Taylor* did not involve *completed* Hobbs Act robbery, as is the case here, but rather, concerned whether *attempted* Hobbs Act robbery qualifies as a valid

crime-of-violence predicate under § 924(c).  The Court held that attempted Hobbs Act robbery is not categorically a crime of violence because no element of the attempted robbery offense requires that the defendant use, attempt to use, or threaten to use force.  *Id.* at 2021.   Completed Hobbs Act robbery categorically qualifies as a "crime of violence" under § 924(c)(3)(A), because it "has as an element the use, attempted use, or threatened use of physical force against the person of another."  *Diaz*, 863 F.3d at 783.  Accordingly, because *Taylor* involves a different predicate offense, it has no application here, and does not entitle Graham to relief.

### 7.  Right to Jury Trial and Right to Face Accuser

As another basis for relief, Graham makes passing reference to the deprivation of his right to a jury trial and right to face his accuser.  (Doc. No. 615 at 3.)  Although Graham fails to elaborate on these arguments, the Court addressed them in its January 15, 2021 Order [Doc. No. 363], which it incorporates herein by reference.

At the September 11, 2020 pretrial conference, Graham and his codefendant announced, for the first time, that they wished to waive their right to a jury trial and proceed with a bench trial.  The Court previously found that Graham knowingly, voluntarily, and intelligently waived his right to a jury trial, as reflected in his signed written waiver and lengthy colloquy with the Court.  (*Id.* at 12–14.)  When Graham attempted to revoke his waiver on the first day of trial, September 22, 2020, the Court properly denied his motion as untimely.  (*See id.* at 6–10.)  Given that Graham fails to elaborate on this argument in his § 2255 Motions, let alone present any new argument, the Court relies on its prior ruling and denies relief for the reasons stated in the January 15, 2021 Order.

20

Graham also provides no detail in support of his claim that his "right to face the accuser" was violated. (Doc. No. 615 at 3.) To the extent he refers to a prior post-trial argument regarding the Government's decision not to call a certain witness at trial, the Court refers again to its January 15, 2021 Order, which addressed this argument. (Jan. 15, 2021 Order at 16.) For the reasons previously stated, Graham is not entitled to relief.

### B. Motions for Release and for an Evidentiary Hearing

Throughout these proceedings, Graham has moved for his release. (*See, e.g.*, Doc. Nos. 166, 298, 317, 332, 444.) He continues to do so. (Doc. Nos. 607, 633, 643, 651.) Graham has been validly charged, detained, convicted, sentenced, and incarcerated. His motions for release are denied.

As for Graham's requests for an evidentiary hearing, § 2255 motion may be dismissed without a hearing if: (1) the defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that Defendant fails to meet the requirements identified in *Delgado*, 162 F.3d at 983, and the record here includes all the information necessary for the Court to rule. *Covey*, 377 F.3d at 909. Accordingly, no evidentiary hearing is required in this case.

### C. Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that the basis for dismissal is not reasonably debatable. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). Accordingly, the Court declines to issue a certificate of appealability and Defendant's request is denied.

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant's Motions to Vacate Under 28 U.S.C. § 2255 [Doc. Nos. 597; 604] are **DENIED**.

2. Defendant's "Pro Se Request for Relief from Judgment or Order" [Doc. No. 605] is **DENIED**.

3. Defendant's Motions for Release Pending Review [Doc. Nos. 607; 633; 643; 651] are **DENIED**.

4. Defendant's Motion to Vacate [Doc. No. 615] is **DENIED**.

5. Defendant's Motion for "Acquittal, Setoff, or Vacate" [Doc. No. 624] is **DENIED**.

6. Defendant's Motions for an Evidentiary Hearing [Doc. Nos. 637; 660] are **DENIED**.

7. Defendant's Motion for Relief from Judgment (Amended) [Doc. No. 642] is **DENIED**.

8. Defendant's Pro Se Supplemental Request [Doc. No. 674] is **DENIED**.

9.  Defendant's Pro Se Request for an Abeyance [Doc. No. 676] is **DENIED**.

10. A certificate of appealability is **DENIED** and no evidentiary hearing is necessary.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: July 13, 2022

<u>s/Susan Richard Nelson</u>
SUSAN RICHARD NELSON
United States District Judge